UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MICHAEL ONDER,                              )
                                            )
        Plaintiff,                          )
                                            )
    v.                                      )        No.  4:12CV599SNLJ
                                            )                  (TIA)
CAROLYN W. COLVIN,[1]                       )
COMMISSIONER OF SOCIAL SECURITY,            )
                                            )
        Defendant.                          )

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This cause is on appeal from an adverse ruling of the Social Security Administration.  The

case was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. §

636(b).  The suit involves an Application for Disability Insurance Benefits under Title II of the

Social Security Act.  Claimant has filed a Brief in Support of his Complaint; the Commissioner has

filed a Brief in Support of her Answer.

## I.      Procedural History

Claimant Michael Onder filed an Application for Disability Insurance Benefits under Title

II of the Act, 42 U.S.C. §§ 401 et. seq. (Tr. 111-24).[2]  Claimant states that his disability began on

August 7, 2009, as a result of constant low back pain, neck pain, shoulder pain, torn rotator cuff,

_____

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14,
2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is
therefore substituted for Michael J. Astrue as the Defendant in this action.

[2]"Tr." refers to the page of the administrative record filed by the Defendant with her Answer
(Docket No. 4/filed June 4, 2012).

and carpal tunnel. (Tr. 126). On initial consideration, the Social Security Administration denied Claimant's claims for benefits. (Tr. 57-60). Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 61-62). On September 27, 2010, a hearing was held before an ALJ. (Tr. 26-55). Claimant testified and was represented by counsel. (Id.). Medical Expert Dr. Albert Oguejiofor and Vocational Expert Herman Litt also testified at the hearing. (Tr. 47-54, 169-81). Thereafter, on November 4, 2010, the ALJ issued a decision denying Claimant's claims for benefits. (Tr. 11-22). After considering the representative brief and the vocational rehabilitation evaluation, the Appeals Council on March 15, 2012 found no basis for changing the ALJ's decision and denied Claimant's request for review of the ALJ's decision. (Tr. 1-6, 171-81, 403-04). The ALJ's determination thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

## II.  Evidence Before the ALJ

### A.  Hearing on September 27, 2010

#### 1.  Claimant's Testimony

At the hearing on September 27, 2010, Claimant testified in response to questions posed by the ALJ and counsel. (Tr. 26-47). Claimant's date of birth is August 30, 1956. (Tr. 30). Claimant is married and lives with his wife. (Tr. 30). Claimant graduated from high school. (Tr.32). Claimant is right-handed. (Tr. 42).

Claimant testified that he last worked on August 15, 2009 when he retired because he could no longer do his job after twenty-nine years. (Tr. 30). Claimant worked on a concrete crew for St. Louis County Department of Highways and Traffic, and his duties included replacing streets, gutters, and sidewalks. Claimant testified that after his carpal tunnel surgery, his hands no

longer had the grip strength and his fingers the sensitivity to do his job. (Tr. 30). Claimant asked his manager if he could transfer to another job, but his manager said no. (Tr. 30-31). Claimant was eligible to retire early so he elected to retire early. (Tr. 31). Claimant's left shoulder and lower back hurt from bending over and finishing the concrete. Claimant injured his left shoulder and was placed on light duty until he retired. Claimant testified that his doctor limited raising his left arm up, and he could not lift over five pounds with each hand. (Tr.31). Claimant indicated that he painted, swept the floors, and cleaned the bathroom for the District to stay on the payroll. (Tr. 31-32).

Claimant testified that sitting and his left shoulder prevent him from working. (Tr. 32). On the three-hour drive to the hearing, Claimant testified that he had to stop twice. (Tr. 37). Claimant testified that he cannot do a job where he would have to stand six hours out of an eight-hour work day because of his back problems. (Tr. 46).

Claimant testified that he has two bulging discs and a cracked disc in his back. (Tr. 32). Although the surgeon recommended surgery, Claimant decided not to have surgery based on the results his coworkers had after surgery. (Tr. 33). Moving around relieves the pain in his back. (Tr. 47). Claimant experiences numbness in his right leg if he sits too long. Claimant has pain in his hands and knuckles and cannot open a jar or a water bottle. (Tr. 33). Claimant experiences swelling in his joints and ankles. (Tr. 34). Claimant testified that he has a leaky heart valve and dilated aortic root being monitored by a doctor. Dr. Tiefenbrunn has maintained Claimant on the same medication regimen for his high cholesterol and blood pressure. (Tr. 34). Claimant takes Percocet for pain, and the medication works fairly well. (Tr. 35). Claimant experiences muscle

spasms in his neck and shoulders. (Tr. 36). Claimant testified that he does not have any side effects from his medications. (Tr. 42).

Claimant testified that he can sit for thirty minutes and stand for fifteen to twenty minutes. (Tr. 36-37). Claimant can walk for fifteen to twenty minutes. (Tr. 40). Claimant can lift fifteen to twenty pounds with his right hand and ten pounds with his left hand. Since he has retired, the doctor has not placed any particular restrictions on Claimant. (Tr. 41). Claimant testified that he cannot squat or kneel. (Tr. 44). He has problems putting on his shoes because he cannot bend over. (Tr. 45-46). Claimant has difficulty pushing and pulling with his left arm. (Tr. 46).

During the day, Claimant testified that he goes on the Internet and checks his email. (Tr. 43). After thirty to forty-five minutes, he has to get up. If asked, he goes grocery shopping for his wife. Claimant testified that he can vacuum around the house and take out the trash. (Tr.43). Claimant has difficulty holding onto things because he does not have feeling in his finger tips since the surgery. (Tr. 44). Claimant testified that he spends three to four hours each day sitting in a reclining chair. (Tr. 45). The rest of the day he goes to the store, goes to visit a friend, goes outside and sits on the porch, or works on the computer. (Tr. 45).

Claimant testified that he does not have much trouble lifting depending upon how he feels. (Tr. 41). He has problems standing longer than fifteen to twenty minutes because of his leg problems. (Tr. 41). Claimant testified that he could bend over and pick up something on the floor, but this movement would cause him to become dizzy and light-headed. (Tr. 42). Claimant testified that he has no difficulty following directions or instructions except he likes to do things his way. (Tr. 43).

## 2. Testimony of Medical Expert

Medical Expert Dr. Albert Oguejiofor listed musculoskeletal and cardiovascular issues, numbness in his wrist, and moderate median neuropathy on the right side and mild median neuropathy on the left side, suggestive of carpal tunnel syndrome. (Tr. 47-48). Dr. Oguejiofor noted that Claimant had right carpel tunnel release on June 29, 2009 and left carpal tunnel release on August 10, 2009, both without complications. (Tr. 48). Following the surgeries, Dr. Oguejiofor found Claimant did not have any muscle loss, loss of power, or loss of transition in the hands with regard to his carpel tunnel syndrome. With respect to his pain in the left elbow, Dr. Oguejiofor noted that Claimant had a MRI in January 2004 showing intrasubstance and partial tear of the common extensor tendon in the left elbow. (Tr. 48). Claimant has a history of mild paroxysmal atrial fibrillation but in September 2009 he was evaluated by a Holter monitor.[3] (Tr. 49). Dr. Oguejiofor explained that the monitor revealed that Claimant had predominantly sinus rhythm with an average heart rate of 70, frequent premature beats, and periods of approximately five hours of sinus bradycardia. Dr. Oguejiofor noted that the twenty-four hour study showed no episodes of atrial fibrillation. The September 2009 echocardiogram showed an ejection fraction of 61% and left ventricular hypertrophy. Dr. Oguejiofor concluded that based on the objective medical evidence, Claimant has no severe cardiac impairment. (Tr. 49).

Dr. Oguejiofor opined that Claimant would not meet any of the listings but considering his impairments in combination, he would restrict Claimant to a medium RFC even though the Commission found Claimant has no exertional limitations. (Tr. 50).

---

[3]A Holter monitor is "a technique for long-term continuous usually ambulatory, recording of electrocardiographic signals on magnetic tape for scanning and selection of significant but fleeting changes that might otherwise escape notice." Stedman's Med. Dictionary (27th ed. 2000).

### 3. Testimony of Vocational Expert

Vocational Expert Herman Litt testified in response to the ALJ's questions. (Tr. 50-54). Mr. Litt testified that Claimant's past relevant work was a construction worker, a job heavy in exertion level and semi-skilled. (Tr. 54). Mr. Litt indicated that none of the skills from his past relevant work would be transferable for a person fifty-four years of age to medium work. (Tr. 50-51).

Claimant's counsel asked if Claimant were limited to no more than occasional use of both of his hands for fine fingering and feeling would he be able to continue to perform medium work? (Tr. 51). Mr. Litt responded that it would be difficult. (Tr. 51).

When asked if the hypothetical claimant could be accommodated if he needed a sit/stand option and needed to be able to sit for thirty minutes and then get up and stand for fifteen to twenty minutes, Mr. Litt responded no. Mr. Litt indicated that there are some jobs in the light range that would allow for a sit/stand option. Mr. Litt testified that examples of jobs allowing for a sit/stand option at will include basic bench work and various types of assembly work. (Tr. 51-52). Mr. Litt responded no when asked if a claimant would be able to perform those type of jobs if the additional limitations of fingering and feeling were added. (Tr. 52).

Counsel asked if Claimant would be able to perform any type of work with the restrictions given by Dr. Tiefenbrunn. (Tr. 52). Mr. Litt responded he did not believe so because he would not be able to work a full eight hour day, and he would need unscheduled work breaks beyond the usual work breaks. (Tr. 53). Counsel next asked if Claimant could work if he had limitations precluding him from any repetitive rotation of the left shoulder or any overhead work, activities requiring extension of the left arm from the torso for any prolonged periods of time, or activities

requiring repetitive gripping or squeezing with either hand. Mr. Litt responded such limitations would preclude Claimant from working. (Tr. 53).

### 4. Forms Completed by Claimant

In the Disability Report - Adult, Claimant reported he retired because of his condition and other reasons. (Tr. 125-34).

In the Function Report - Adult, Claimant listed his daily activities to include watching television, doing a little house work and maybe some outside work, eating dinner and then going somewhere, or watching television. (Tr. 149-59). Claimant listed his household chores to include vacuuming, doing the laundry, putting dishes away, and cutting the grass on a riding mower. Claimant indicated that he goes outside every day and travels by driving a car. Claimant shops for clothes and groceries once a week. Claimant listed reading, watching television, hunting, and fishing as his hobbies and interests. Claimant attends church and goes to the store on a regular basis. (Tr. 149-59).

### 5. Vocational Rehabilitation Evaluation

In the Vocational Rehabilitation Evaluation completed on January 11, 2011 by James Israel, CRC, CVE, at the request of counsel, (Tr. 174-81).[4] Mr. Israel listed Claimant's complaints to be bilateral shooting pain in his shoulders, extensive discomfort in the area of his neck radiating through his shoulders and into his hands and wrists, lower back pain, anxiety and irritability, and reduced ability to concentrate. (Tr. 175). Claimant reported extensive functional impairment including loss of strength especially with pushing and pulling motions such as lifting

---

[4]The undersigned notes this report was not part of the record before the ALJ at the time he issued his decision. A review of the record shows that the Appeals Council considered the report and denied review. (Tr. 2, 5).

and carrying and marked difficulty in performing tasks requiring upper arm or lower limb movement and strength such as stooping, squatting, kneeling, bending, or twisting. Claimant reported being able to lift or carry objects weighing up to twenty pounds, to sit for one hour, to stand for one hour without using an assistive device, and to walk for one half mile. Mr. Israel noted that Claimant's ability to communicate was limited by substantial left side hearing loss. Mr. Israel observed Claimant to walk without any assistive device and appeared to be in notable discomfort as the evaluation progressed, but he sat for one hour before taking a break. (Tr. 175).

Mr. Israel noted how Dr. Thomas Musich placed the following work restrictions on Claimant: "refraining from activities that require any repetitive rotation of the left shoulder, any overhead work, or activities requiring extension of the left arm from the torso for any prolonged periods of time; refrain from activities that require repetitive gripping or squeezing with either hand, and activities that require repetitive cervical flexion, extension and rotation." (Tr. 176).

Mr. Israel found that over the past fifteen years, Claimant had acquired knowledge or skills not readily transferrable to other types of lighter work as performed in the local or national economy. (Tr. 179). Mr. Israel noted that the employment guidelines require that Claimant has tasks that "1) do not necessitate any repetitive rotation of the left shoulder[;] 2) do not mandate any overhead work[;] 3) do not mandate activities requiring extension of the left arm from the torso for any prolonged periods of time[;] 4) do not require repetitive gripping or squeezing with either hand[; and] do not demand repetitive cervical flexion, extension and rotation." (Tr. 179). Mr. Israel noted that jobs falling into these guidelines include sedentary and light strength classification of employment. (Tr. 179).

Mr. Israel noted that there would be significant numbers of unskilled and semi-skilled sedentary or light jobs such as assemblers, order clerks, handpackers, and cashiers in the local labor market. (Tr. 180). Mr. Israel opined that "[t]he types of unskilled or semi-skilled sedentary and light jobs that meet the medical guidelines generally do not afford the degree of latitude and work site accommodations that Michael's overall physical disabilities would not necessitate." (Tr. 180). Mr. Israel concluded that Claimant's overall limitations, educational and work background factors, and work site accommodations have rendered him vocationally unprepared and disadvantaged to compete in the open labor market. (Tr. 180). In the conclusion, Mr. Israel found that Claimant's diminished capabilities would make it most unlikely he could sustain any substantial gainful or full-time job. (Tr. 181).

## III.    Medical Records

Dr. R. Evan Crandall of Aesthetic & Reconstructive Surgery Associates treated Claimant for tennis elbow from January 2004 through September 2004. (Tr. 234, 326-54). Dr. Crandall noted that Claimant had been attending therapy and had experienced substantial reduction in his symptoms. (Tr. 234, 326).

From December 20, 2007 through September 30, 2008, Claimant received treatment at Hill Chiropractic for lower back pain on twelve occasions. (Tr. 191-92).

The June 16, 2008 MRI of his thoracic spinal cord showed a linear area of abnormal increased signal intensity within the thoracic spinal cord at C7 level and an indentation upon the dorsal aspect of the cord by what appears to be CSF signal intensity. (Tr. 187). A comparison to a previous MRI dated February 6, 2008, showed no major interval change noting that the signal abnormality in the thoracic spinal cord appears similar as does the indentation upon its dorsal

aspect at T6-7. (Tr. 187). The doctor noted that "given the indentation of the posterior aspect of the cord at T6-7 by what appears to be CSF signal intensity, the possibility of an intradural arachnoid cyst producing cord impingement is suggested." (Tr. 187-88).

On September 4, 2008, Claimant was evaluated at Orthopedic Associates for his left shoulder pain. (Tr. 195). Dr. Herbert Haupt noted he had previously treated Claimant's shoulder impingement with surgical management and debridement. Claimant reported returning to work and activities and doing well until the date of injury of August 14, 2008 while pulling on concrete at work he experienced pain and discomfort in his left shoulder. Claimant reported having limited course of physical therapy with little benefit. The August 28, 2008 MRI shows extensive partial thickness tear of the supraspinatus. Examination showed full passive range of motion of left shoulder and no significant discomfort. Dr. Haupt also noted that Claimant has good abduction and external rotation. Dr. Haupt found Claimant to have likely shoulder strain and ordered a conservative care program. (Tr. 195). In follow-up treatment on September 18, 2008, Claimant reported persistent irritation and perhaps more discomfort after starting physical therapy. (Tr. 196). Examination showed strength fairly well with external rotation. Dr. Haupt injected his shoulder with Lidocaine. Dr. Haupt noted Claimant could return to work on light duty. (Tr. 196).

On September 19, 2008, Claimant returned to the Sullivan Family Practice for routine follow-up treatment with Dr. Matthew Tiefenbrunn. (Tr. 204). Overall, Claimant reported doing well. Dr. Tiefenbrunn diagnosed Claimant with hypertension, hyperlipidemia, paroxysmal atrial fibrillation, and mild mitral and tricuspid regurgitation. (Tr. 204). Dr. Tiefenbrunn continued his medication regimen. (Tr. 205).

On October 7, 2008, Claimant returned to Dr. Haupt's office and reported doing much better after the injection and further physical therapy. (Tr. 197). Examination showed full passive range of motion and excellent strength in all planes. Dr. Haupt noted marked clinical improvement and ordered Claimant to return to full duty work program and continue home exercise program. In follow-up treatment on October 28, 2008, Claimant reported functioning at full duties and having no major complaints and happy with the results. Examination showed passive range of motion to be full and good strength. (Tr. 197). Dr. Haupt found Claimant to have maximum medical improvement and released him from care on full duties and no limitations. (Tr. 198).

The August 15, 2008 x-ray of his left shoulder was unremarkable. (Tr. 185). The x-ray of his cervical spine showed straightened usual cervical lordosis. (Tr. 186).

On February 27, 2009, Claimant returned for follow-up treatment. (Tr. 202). Examination showed mild stiffness with forward flexion and lateral rotation of neck. (Tr. 203). Dr. Tiefenbrunn noted Claimant to have subjective hearing loss on the right side, hypertension, well controlled, hyperlipidemia, mixed pattern but on medications, diverticulosis, asymptomatic, and neck pain but no longer with any paresthesias. Dr. Tiefenbrunn continued his medication regimen. (Tr. 203).

On May 1, 2009, Claimant returned to Dr. Tiefenbrunn's office and reported possible carpal tunnel syndrome. (Tr. 201, 379). Claimant reported not having neck pain and having a history of C6 C7 discectomy procedure but he has recovered nicely from that procedure. Claimant experiences pain, numbness, and tingling in his hand. Examination showed a full range of motion in his neck and no cervical vertebral tenderness present with forward flexion or lateral

rotation.  Dr. Tiefenbrunn noted that Claimant has normal motor strength in his upper extremities.

Dr. Tiefenbrunn referred Claimant for a nerve conduction/EMG studies.  (Tr. 201, 379).

The May 7, 2009 EMG revealed evidence of a moderate right and mild left carpal tunnel syndrome affecting sensory and motor components.  (Tr. 212, 228, 323, 384).

In the June 3, 2009 letter, Dr. Crandall explained how Claimant has numbness and tingling in his hands.  (Tr. 225, 306, 309).  Dr. Crandall noted how Claimant had previous neck surgery by Dr. Youkalis last year resulting in substantial benefit.  Claimant reported his hobby to be horses.

Claimant reported working for St. Louis County as a concrete worker and his job duties include operating equipment, driving trucks, using hammers, lifting, using concrete tools and jackhammers, and drilling.  (Tr. 225, 306, 309).  Examination of active range of motion showed thumb, index, middle, ring and small digits to be within normal limits bilaterally, elbows and shoulders to be within normal limits bilaterally.  (Tr. 226, 307, 310).  Dr. Crandall recommended surgery to resolve his symptoms.  (Tr. 226, 307, 310).  Claimant reported working full duty as a concrete worker for twenty nine years and listed horses as his hobbies.  (Tr. 319).

On June 29, 2009, Dr. Crandall performed right open standard carpal tunnel release as treatment for Claimant's right carpal tunnel syndrome.  (Tr. 224, 298).  In the Work Status Certificate dated June 29, 2009, Dr. Crandall placed Claimant on modified duty with no work with his right hand and no lifting over five pounds with hie left hand.  (Tr. 303).

In the July 20, 2009 letter, Dr. Crandall reports how Claimant has excellent range of motion and strength after undergoing right open carpal tunnel release on June 29, 2009 and released Claimant to one-handed duty.  (Tr. 222, 282-83).

On August 10, 2009 Dr. Crandall performed left open standard carpal tunnel release as treatment for Claimant's left carpal tunnel syndrome. (Tr. 221, 272). In the August 31, 2009 letter, Dr. Crandall noted how Claimant has been doing well since his surgeries and has been making good progress in both hands and his numbness and tingling have been relieved. (Tr. 219, 254-55). Dr. Crandall found Claimant could work one-handed duty. (Tr. 219, 254-55).

In the Work Status Certificate dated August 10, 2009, Dr. Crandall placed Claimant on modified duty of no work with his left hand and no lifting over five pounds with his right hand. (Tr. 279).

In the September 18, 2009 ProRehab Report, Sharon Tiller, a physical therapist, noted how Claimant was evaluated on August 18, 2009, and he has attended all scheduled sessions. (Tr. 252-53). Claimant reported being retired and no longer working. (Tr. 252). Claimant reported being "fixed pretty good. I am happy." (Tr. 252). During treatment, Claimant reported having recently retired. (Tr. 262).

In the September 23, 2009 letter, Dr. Crandall explains how Claimant underwent a right open carpal tunnel release on June 29, 2009 and a left open carpal tunnel release on August 10, 2009. (Tr. 218, 247-48). Dr. Crandall noted that Claimant has completed his therapy program, and he had good grip strength and appears to be having a good result. (Tr. 218, 247-48). In the Quick Report, Dr. Crandall found Claimant could return to full work duty on September 24, 2009 with no modifications required. (Tr. 249-50).

In the follow-up treatment with Dr. Tiefenbrunn on September 25, 2009, Claimant reported having bilateral carpal tunnel release and recovering nicely from the procedures. (Tr. 377). Claimant reported being officially retired from his construction job. (Tr. 377).

The Echocardiographic Report of September 29, 2009 showed normal left ventricle size and function, mildly dilated aortic root, and mild mitral and tricuspid regurgitation. (Tr. 383).

The Heart Center Holter Report of September 30, 2009 showed predominant rhythm at an average heart rate of 70 bpm and rhythm included frequent PVCs. (Tr. 382).

In the Physical Residual Functional Capacity Assessment dated December 1, 2009, the consultant indicated that Claimant has no exertional, postural, manipulative, visual, communicative, or environmental limitations established. (Tr. 239-42).

On January 14, 2010, Dr. Thomas Musich evaluated Claimant at counsel's request and completed an independent medical evaluation. (Tr. 387). Dr. Musich noted that he reviewed his August 28, 2006 IME report which primarily addressed Claimant's left elbow pathology, treatment, and ongoing symptoms, and his October 4, 2001 IME report regarding Claimant's complaints of low back pain. (Tr. 393). Dr. Musich noted that claimant worked on a full time basis for St. Louis County Highways and Traffic Department for thirty years until his departure on August 15, 2009. (Tr. 387). Claimant explained that he could not perform his job duties because of his neck, left shoulder, elbows, wrists, and low back. (Tr. 387). Examination of his left shoulder showed left shoulder impingement to be positive. (Tr. 390). Dr. Musich noted that Claimant's maximum right hand grip is eighty pounds and left hand grip is fifty two pounds, and no evidence of acute inflammatory pathology in either hand or wrist. (Tr. 390). Dr. Musich opined that Claimant has a permanent partial disability of 30% of his left shoulder and Claimant should continue to participate in a home exercise program and refrain from activities that require any repetitive rotation of the left shoulder or any overhead work or activities requiring extension of the left arm from the torso for any prolonged periods of time. (Tr. 391). Dr. Musich further

opined that Claimant has a permanent partial disability of 25% of the left wrist and 35% of the

right wrist, and he should refrain from activities that require repetitive gripping or squeezing of

either hand.  (Tr. 391).  Dr. Musich also opined that Claimant suffers chronic daily posterior neck

pain aggravated by cervical motion, and he has a permanent partial disability of 30%, and he

should refrain form activities that require repetitive cervical flexion, extension and rotation.  (Tr.

395).  Further, Claimant should refrain from activities that require working on ladders or above

shoulder level or repetitive heavy lifting over fifty pounds.  (Tr. 395).

On September 24, 2010, Dr. Tiefenbrunn completed a Physical Residual Functional

Capacity Questionnaire.  (Tr. 398-402).  Dr. Tiefenbrunn found Claimant capable of performing

low stress jobs, and he could sit for one to two hours and stand for one to two hours.  (Tr. 399).

Dr. Tiefenbrunn noted that Claimant would have to walk around for ninety minutes during an

eight-hour work day for ten minutes at a time.  (Tr. 400).  Dr. Tiefenbrunn noted that Claimant

has significant limitations with reaching, handling, and fingering.  (Tr. 401).

## IV.    The ALJ's Decision

The ALJ found that Claimant has not engaged in substantial gainful activity since August

7, 2009, the alleged onset date.  (Tr. 16).  Claimant meets the insured status requirements of the

Social Security Act through December 31, 2014.  The ALJ found that the medical evidence

establishes that Claimant has the severe impairments of a history on bilateral carpal tunnel

syndrome, status post bilateral release; left shoulder strain; partial tear of left elbow; a history of

atrial fibrillation; and degenerative disc disease, but no impairment or combination of impairments

listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.  (Tr. 16).

The ALJ opined that Claimant has the residual functional capacity to perform the full range of

medium work. (Tr. 17). The ALJ found that Claimant is unable to perform any past relevant work. (Tr. 21).

The ALJ found Claimant was born on August 30, 1956 which is defined as an individual closely approaching advanced age on the alleged disability date. (Tr. 21). The ALJ found Claimant has a high school education and able to communicate in English. The ALJ noted that the transferability of job skills is not material to the determination of disability, because applying the Medical-Vocational Rules supports a finding of not disabled whether or not Claimant has transferable job skills. Considering Claimant's age, education, work experience, and residual functional capacity, the ALJ opined that there are jobs that exist in significant numbers in the national economy that Claimant can perform at the medium level of work activity. (Tr. 21). The ALJ concluded that Claimant has not been under a disability from August 7, 2009 through the date of this decision. (Tr. 22).

## V.       Discussion

In a  disability insurance benefits case, the burden is on the claimant to prove that he or she has a disability. <u>Pearsall v. Massanari</u>, 274 F.3d 1211, 1217 (8th Cir. 2001). Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). Additionally, the claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial

gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and

1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Commissioner has promulgated regulations outlining a five-step process to guide an

ALJ in determining whether an individual is disabled. First, the ALJ must determine whether the

individual is engaged in "substantial gainful activity." If she is, then she is not eligible for

disability benefits. 20 C.F.R. § 404. 1520(b). If she is not, the ALJ must consider step two which

asks whether the individual has a "severe impairment" that "significantly limits [the claimant's]

physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant is

not found to have a severe impairment, she is not eligible for disability benefits. If the claimant is

found to have a severe impairment the ALJ proceeds to step three in which he must determine

whether the impairment meets or is equal to one determined by the Commissioner to be

conclusively disabling. If the impairment is specifically listed or is equal to a listed impairment,

the claimant will be found disabled. 20 C.F.R. § 404.1520(d). If the impairment is not listed or is

not the equivalent of a listed impairment, the ALJ moves on to step four which asks whether the

claimant is capable of doing past relevant work. If the claimant can still perform past work, she is

not disabled. 20 C.F.R. § 404.1520(e). If the claimant cannot perform past work, the ALJ

proceeds to step five in which the ALJ determines whether the claimant is capable of performing

other work in the national economy. In step five, the ALJ must consider the claimant's "age,

education, and past work experience." Only if a claimant is found incapable of performing other

work in the national economy will she be found disabled. 20 C.F.R. § 404.1520(f); see also

Bowen, 482 U.S. at 140-41 (explaining five-step process).

Court review of an ALJ's disability determination is narrow; the ALJ's findings will be affirmed if they are supported by "substantial evidence on the record as a whole." Pearsall, 274 F.3d at 1217. Substantial evidence has been defined as "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Id. The court's review "is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The Court will affirm the Commissioner's decision as long as there is substantial evidence in the record to support his findings, regardless of whether substantial evidence exists to support a different conclusion. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).

In reviewing the Commissioner's decision, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The claimant's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The claimant's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the claimant's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

The ALJ's decision whether a person is disabled under the standards set forth above is conclusive upon this Court "if it is supported by substantial evidence on the record as a whole." Wiese v. Astrue, 552 F.3d 728, 730 (8th Cir. 2009) (quoting Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008)). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion." Wiese, 552 F.3d at 730 (quoting Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004)). When reviewing the record to determine whether the Commissioner's decision is supported by substantial evidence, however, the Court must consider evidence that supports the decision and evidence that fairly detracts from that decision. Id. The Court may not reverse that decision merely because substantial evidence would also support an opposite conclusion, Dunahoo v. Apfel, 241 F.3d 1033, 1037 (8th Cir. 2001), or it might have "come to a different conclusion." Wiese, 552 F.3d at 730. Thus, if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, the [Court] must affirm the agency's decision." Wheeler v. Apfel, 224 F.3d 891, 894-95 (8th Cir. 2000). See also Owen v. Astrue, 551 F.3d 792, 798 (8th Cir. 2008) (the ALJ's denial of benefits is not to be reversed "so long as the ALJ's decision falls within the available zone of choice") (internal quotations omitted).

Claimant argues that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ improperly discounted the opinion of his treating physicians. Claimant further contends that the ALJ erred in formulating the RFC, and the RFC failed to identify restrictions caused by each severe impairment.

A.    Weight Given to Treating Doctors

Claimant contends that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ improperly discounted the opinion of his treating physicians.

"A treating physician's opinion is given controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'" Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009) (quoting 20 C.F.R. §404.1527(d)(2) (alteration in original).  "[W]hile a treating physician's opinion is generally entitled to substantial weight, such an opinion does not automatically control because the [ALJ] must evaluate the record as a whole." Wagner v. Astrue, 499 F.3d 842, 849 (8th Cir. 2007) (internal quotations omitted).  Thus, "'an ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record.'" Id. (quoting Prosch v. Apfel, 201 F.3d 1010, 1013-14 (8th Cir. 2000)).

A treating physician's opinion may be, but is not automatically, entitled to controlling weight.  20 C.F.R. § 404.1527(d)(2).  Controlling weight may not be given unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.  SSR 96-2P, 1996 WL 374188 (July 2, 1996).  Even a well-supported medical opinion will not be given controlling weight if it is inconsistent with other substantial evidence in the record.  Id.  "The record must be evaluated as a whole to determine whether the treating physician's opinion should control."  Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009).  When a treating physician's opinions "are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight."  Halverson v. Astrue, 600 F.3d 922, 930 (8th Cir. 2010( (quoting Krogmeier v.

Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002)).  "A treating physician's opinion does not automatically control, since the record must be evaluated as a whole."  Perkins v. Astrue, 2011 WL 3477199, *2 (8th Cir. 2011) (quoting Medhaug v. Astrue, 578 F.3d 805, 815 (8th Cir. 2009)).  The ALJ is charged with the responsibility of resolving conflicts among the medical opinions.  Finch v. Astrue, 547 F.3d 933, 936 (8th Cir. 2008).

In his written decision, the ALJ found

the objective medical evidence contained in the body of his report is inconsistent with his conclusion.  For example, Dr. Musich found the claimant had only a loss of 30 percent on cervical flexion and 25 percent of loss on cervical rotation and lateral flexion bilaterally.  Extension was full.  There was no dermatomal paresthesia in the upper extremities radiating from the cervical spine.  Based on the foregoing, little weight is afforded to the opinion of Dr. Musich.

(Tr. 21) (internal citation omitted).

The record reflects that Dr. Musich saw Claimant three times in a ten-year period, and one of the dates included the date of the evaluation at the request of counsel.  "Generally, the longer a treating source has treated [a claimant] and the more times [the claimant has] been seen by a treating source, the more weight [the Commissioner] will give to the source's medical opinion." 20 C.F.R. §§ 404.1527(d)(2)(I) and 416.927(d)(2)(I); Randolph v. Barnhart, 386 F.3d 835, 840 (8th Cir. 2004) (holding that a doctor's opinion stated in a checklist should not be given controlling weight because the doctor had met with the plaintiff only three times at the time he completed the form.).  "When deciding 'how much weight to give a treating physician's opinion, an ALJ must also consider the length of the treatment relationship and the frequency of the examinations.'"  Martise v. Astrue, 641 F.3d 909, 926 (8th Cir. 2011) (quoting Casey v. Astrue, 503 F.3d 687, 692 (8th Cir. 2007).  The undersigned notes that the record does not reflect that

Dr. Musich actually treated Claimant after August 28, 2006. Likewise, other than the statement in his January 14, 2010 evaluation, there is no independent evidence in the record showing that Dr. Musich treated Claimant after that date.

Moreover, Dr. Musich's evaluation does not reflect that he conducted any testing to reach his opinion. See Veal v. Bowen, 833 F.2d 693, 699 (7th Cir. 1987) (holding that where diagnoses of treating doctors are not supported by medically acceptable clinical and laboratory diagnostic techniques, the court need not accord such diagnoses great weight).

As noted by the ALJ, his findings in the evaluation were inconsistent with his opinion Claimant should avoid activities involving any repetitive neck motion. An ALJ may "discount or even disregard the opinion of a treating physician where the treating physician renders inconsistent opinions that undermine the credibility of such opinions." Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000); see also Davidson v. Astrue, 578 F.3d 838, 842 (8th Cir. 2009) ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes."). Likewise, Dr. Musich's restrictions based on Claimant's carpal tunnel syndrome and shoulder injury are inconsistent with Dr. Crandall's releasing Claimant to all activities without restriction and full duty work activity after surgery and completion of physical therapy. Examination showed Claimant to have good grip strength following carpal tunnel surgery. Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) (holding that an ALJ may give a treating doctor's opinion limited weight if inconsistent with the record).

In follow-up treatment on October 28, 2008 with Dr. Haupt, Claimant reported functioning at full duties and having no major complaints and happy with the results. Examination showed passive

range of motion to be full and good strength. Dr. Haupt found Claimant to have maximum medical improvement and released him from care on full duties and no limitations.

To the extent Dr. Musich meant to opine that Claimant could not work, a treating physician's opinion that a claimant is not able to return to work "involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner give controlling weight." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005).

"A treating physician's opinion is given controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'" Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009) (quoting 20 C.F.R. §404.1527(d)(2) (alteration in original). "[W]hile a treating physician's opinion is generally entitled to substantial weight, such an opinion does not automatically control because the [ALJ] must evaluate the record as a whole." Wagner v. Astrue, 499 F.3d 842, 849 (8th Cir. 2007) (internal quotations omitted). Thus, "'an ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record.'" Id. (quoting Prosch v. Apfel, 201 F.3d 1010, 1013-14 (8th Cir. 2000)).

A treating physician's opinion may be, but is not automatically, entitled to controlling weight. 20 C.F.R. § 404.1527(d)(2). Controlling weight may not be given unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. SSR 96-2P, 1996 WL 374188 (July 2, 1996). Even a well-supported medical opinion will not be given controlling weight if it is inconsistent with other substantial evidence in the record. Id. "The record must be evaluated as a whole to determine whether the treating physician's opinion should

control." Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009). When a treating physician's

opinions "are inconsistent or contrary to the medical evidence as a whole, they are entitled to less

weight." Halverson v. Astrue, 600 F.3d 922, 930 (8th Cir. 2010( (quoting Krogmeier v.

Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002)). "A treating physician's opinion does not

automatically control, since the record must be evaluated as a whole." Perkins v. Astrue, 2011

WL 3477199, *2 (8th Cir. 2011) (quoting Medhaug v. Astrue, 578 F.3d 805, 815 (8th Cir.

2009)). The ALJ is charged with the responsibility of resolving conflicts among the medical

opinions. Finch v. Astrue, 547 F.3d 933, 936 (8th Cir. 2008).

On September 24, 2010, Dr. Tiefenbrunn completed a Physical Residual Functional

Capacity Questionnaire finding Claimant capable of performing low stress jobs, and able to sit for

one to two hours and stand for one to two hours. Dr. Tiefenbrunn noted that Claimant would

have to walk around for ninety minutes during an eight-hour work day for ten minutes at a time.

Dr. Tiefenbrunn noted that Claimant has significant limitations with reaching, handling, and

fingering. The undersigned notes that the records show the last time Claimant saw Dr.

Tiefenbrunn for treatment was on September 25, 2009, one year before he completed the

questionnaire. In that treatment note, Claimant reported having bilateral carpal tunnel release and

recovering nicely from the procedures. Claimant reported being officially retired from his

construction job.

First, the undersigned notes that the medical source opinion was completed one year after

Dr. Tietenbrunn last treated Claimant. Indeed, in the September 29, 2009 treatment note,

Claimant reported having bilateral carpal tunnel release and recovering nicely from the

procedures. Claimant reported being officially retired from his construction job.

Next, as considered by the ALJ, the limitations imposed by Dr. Tieferbrunn are inconsistent with his own treatment notes, including his reporting that Claimant had recovered nicely from the carpal tunnel surgeries, and he appeared to be in good health and contradicted by the record as a whole. On May 1, 2009, Claimant returned to Dr. Tiefenbrunn's office and reported not having neck pain and having a history of C6 C7 discectomy procedure but he has recovered nicely from that procedure. Examination showed a full range of motion in his neck and no cervical vertebral tenderness present with forward flexion or lateral rotation. Dr. Tiefenbrunn noted that Claimant has normal motor strength in his upper extremeties. In the follow-up treatment on September 25, 2009, Claimant reported having bilateral carpal tunnel release and recovering nicely from the procedures. Claimant reported being officially retired from his construction job.[5]

The ALJ acknowledged that Dr. Tiefenbrunn was a treating source, but that the physical residual functional capacity questionnaire he completed on September 24, 2010 was not entitled

---

[5]The undersigned notes that the record is unclear whether Claimant stopped working because of his alleged disabling impairments or his choice to retire. See McCoy v. Astrue, 648 F.3d 605, 614 (8th Cir. 2011) (inconsistencies in the record detract from a claimant's credibility). At the hearing, Claimant testified that he asked his manager if he could transfer to another job, but his manager said no, and so he elected to retire early. In Dr. Tiefenbrunn's treatment notes and the physical therapy notes, Claimant reported being retired and no longer working. The Eighth Circuit has found it significant when a claimant leaves work for reasons other than disability. Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005)(claimant stopped working after being fired, not because of her disability); Kelley v. Barnhart, 372 F.3d 958, 961 (8th Cir. 2004) (claimant's leaving work for reasons unrelated to medical condition detracted from credibility); Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) (claimant left his job because the job ended; therefore, not unreasonable for the ALJ to find that this suggested that his impairments were not as severe as he alleged); Weber v. Barnhart, 348 F.3d 723, 725 (8th Cir. 2003) (noting that claimant left her job due to lack of transportation, not due to disability). See also Lindsay v. Astrue, 2009 WL 2382337, at *3 (W.D. Mo. July 30, 2009) ("Plaintiff reported looking for work and contacting temporary agencies. These statements are inconsistent with disability and indicate that Plaintiff did not view his pain as disabling.").

to controlling weight, because it was inconsistent with his prescribed medical treatment. See Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007) ("If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight."). Likewise, Dr. Tiefenbrunn's questionnaire is inconsistent with his own treatment notes. Davidson v. Astrue, 578 F.3d 838, 842 (8th Cir. 2009) ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes."). An ALJ may "discount or even disregard the opinion of a treating physician ... where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000); Hackler v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (holding that where a treating physician's notes are inconsistent with his or her RFC assessment, controlling weight is not given to the RFC assessment). Indeed, in his treatment notes Dr. Tiefenbrunn never set forth any specific limitations on physical activity. See Ellis v. Barnhart, 392 F.3d 988, 995 (8th Cir. 2005) (discrediting treating physician's opinion in part because he never ordered or suggested the claimant limit his activities). Dr. Tiefenbrunn's treatment notes do not reflect the degree of limitation he noted in his questionnaire. The undersigned concludes that the ALJ did not err in affording little weight to Dr. Tiefenbrunn's findings inasmuch the findings are not supported by the objective medical evidence.

B.     Residual Functional Capacity

     Claimant further contends that the ALJ erred in formulating the RFC, and the RFC failed to identify restrictions caused by each severe impairment.

     A claimant's RFC is what he can do despite his limitations. Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001). The claimant has the burden to establish his RFC. Eichelberger v.

Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). The ALJ determines a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations. Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005); Eichelberger, 390 F.3d at 591; 20 C.F.R. § 404.1545(a). The ALJ is "required to consider at least some supporting evidence from a [medical professional]" and should therefore obtain medical evidence that addresses the claimant's ability to function in the workplace. Hutsell v. Massanari, 259 F.3d 707, 712 (8th Cir. 2001) (internal quotation marks and citation omitted). An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand. Id.

In his decision the ALJ thoroughly discussed the medical evidence of record, his lack of functional restrictions by any physicians except after bilateral carpal tunnel release surgery, and Claimant's essentially normal activities of daily living. See Gray v. Apfel, 192 F.3d 799, 803-04 (8th Cir. 1999) (ALJ properly discredited claimant's subjective complaints of pain based on discrepancy between complaints and medical evidence, inconsistent statements, lack of pain medications, and extensive daily activities). The ALJ then addressed several inconsistencies in the record to support his conclusion that Claimant's complaints were not credible.

Specifically, the ALJ noted that no treating physician in any treatment notes stated that Claimant was disabled or unable to work or imposed significant long-term physical and/or mental limitations on Claimant's capacity for work. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (significant that no examining physician submitted medical conclusion that claimant is disabled or unable to work); Edwards v. Secretary of Health & Human Servs., 809 F.2d 506, 508 (8th Cir. 1987) (examining physician's failure to find disability a factor in discrediting subjective

complaints).  The absence of objective medical basis to support Claimant's subjective descriptions

is an important factor the ALJ should consider when evaluating those complaints.  Renstrom v.

Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012); Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir.

1995)(lack of objective findings to support pain is strong evidence of lack of a severe

impairment); Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994)(the ALJ was entitled to find

that the absence of an objective medical basis to support claimant's subjective complaints was an

important factor in evaluating the credibility of her testimony and of her complaints).  Further, the

ALJ noted that Claimant's subjective complaints were not supported or consistent with the

relatively minor clinical signs, symptoms, and findings of the objective medical evidence of record.

In addition, the ALJ noted that no physician had ever made any medically necessary

restrictions, restrictions on his daily activities, or functional limitations except after bilateral carpal

tunnel release surgery.  Brown v. Chater, 87 F.3d 963, 964-65 (8th Cir. 1996) (lack of significant

medical restrictions imposed by treating physicians supported the ALJ's decision of no disability).

Likewise, the ALJ noted how the medical record is devoid of any evidence showing that

Claimant's condition has deteriorated or required aggressive medical treatment.  Chamberlain v.

Shalala, 47 F.3d 1489, 1495 (8th Cir. 1995) (failure to seek aggressive medical care is not

suggestive of disabling pain); Walker v. Shalala, 993 F.2d 630, 631-32 (8th Cir. 1993)( lack of

ongoing treatment is inconsistent with complaints of disabling condition).  The medical record

shows in September 2009, Dr. Crandall released Claimant to full duty work activity three months

after performing bilateral carpal tunnel syndrome surgery.  After the surgery, Dr. Crandall had

placed Claimant on one-handed duty for a couple of months.

The ALJ also properly considered the inconsistencies between Claimant's allegations and his daily activities. The ALJ noted that Claimant is able to occasionally cut the grass with a riding lawn mower, use the computer to check emails, go grocery shopping, perform some household chores such as vacuuming, doing the laundry, and putting away the dishes, drive, and occasionally making dinner. See Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001) ("[i]nconsistencies between subjective complaints of pain and daily living patterns diminish credibility"); Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996) (affirming ALJ's discount of claimant's subjective complaints of pain where claimant was able to care for one of his children on daily basis, drive car infrequently, and go grocery shopping occasionally). Likewise, the undersigned notes that in forms completed by Claimant, he listed visiting friends, attending church, hunting, and fishing as his hobbies and interests. Further, the ALJ noted how, by his own admission, Claimant is able to engage in a fair range of household chores and activities and attend church regularly. Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) ("The ALJ may discount subjective complaints of physical and mental health problems that are inconsistent with medical reports, daily activities, and other such evidence."); See Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999) (finding that activities such as driving, shopping, watching television, and playing cards were inconsistent with the claimant's complaints of disabling pain).

In support of his credibility findings, the ALJ noted that Claimant's impairments were controlled with treatment, see Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009) ("Impairments that are controllable or amenable to treatment do not support a finding of disability."); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (noting that if impairment can be controlled by treatment, it cannot be considered disabling); see also Brown v. Barnhart, 390

F.3d 535, 540 (8th Cir. 2004) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling."), and that no physician who examined Claimant found him to have limitations consistent with disability. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) ("We find it significant that no physician who examined [claimant] submitted a medical conclusion that she is disabled and unable to perform any type of work."). The lack of medical evidence supporting Claimant's complaints was a proper consideration when evaluating his credibility, see Gonzales v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006), as was his failure to pursue more aggressive treatment. See Tate v. Apfel, 167 F.3d 1191, 1197 (8th Cir. 1999). The medical records showed after having bilateral carpal tunnel release surgery, Claimant reported the surgery to be of benefit. Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (an impairment controlled by medication or treatment is not considered disabling); Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001) (impairments controllable or amenable to treatment do not support finding of total disability). In September 2008, examination showed Claimant to have full passive range of motion of the left shoulder, good abduction, and external rotation. In May 2009, examination by Dr. Tiefenbrunn showed full range of motion of the neck, no cervical vertebral tenderness, and normal motor strength and sensation of the upper extremities. Dr. Crandall released Claimant to full work duty in September 2009.

After engaging in a proper credibility analysis, the ALJ incorporated into Claimant's RFC those impairments and restrictions found to be credible. See McGeorge v. Barnhart, 321 F.3d 766, 769 (8th Cir. 2003) (the ALJ "properly limited his RFC determination to only the impairments and limitations he found credible based on his evaluation of the entire record."). The ALJ determined that the medical evidence supported a finding that Claimant could perform the

full range of medium work. In relevant part, the ALJ found "the objective clinical findings do not support the claimant's alleged symptoms or functional limitations. Specifically, the claimant has no neurological deficits, no significant orthopedic abnormalities, and no serious dysfunctioning of bodily organs." (Tr. 21).

As demonstrated above, a review of the ALJ's decision shows the ALJ not to have denied relief solely on the lack of objective medical evidence to support his finding that Claimant is not disabled. Instead, the ALJ considered all the evidence relating to Claimant's subjective complaints, including the various factors as required by Polaski, and determined Claimant's allegations not to be credible. Although the ALJ did not explicitly discuss each Polaski factor in making his credibility determination, a reading of the decision in its entirety shows the ALJ to have acknowledged and considered the factors before discounting Claimant's subjective complaints. See Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). Inasmuch as the ALJ expressly considered Claimant's credibility and noted numerous inconsistencies in the record as a whole, and the ALJ's determination is supported by substantial evidence, such determination should not be disturbed by this Court. Id.; Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996). Because the ALJ gave multiple valid reasons for finding Claimant's subjective complaints not entirely credible, the undersigned defers to the ALJ's credibility findings. See Guilliams v. Barnhart, 393 F.3d 798, 801(8th Cir. 2005).

The undersigned finds that the ALJ considered Claimant's subjective complaints on the basis of the entire record before him and set out the inconsistencies detracting from Claimant's credibility. The ALJ may disbelieve subjective complaints where there are inconsistencies on the record as a whole. Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). The ALJ pointed out

inconsistencies in the record that tended to militate against the Claimant's credibility. <u>See</u>

<u>Guilliams</u>, 393 F.3d at 801 (deference to ALJ's credibility determination is warranted if it is

supported by good reasons and substantial evidence). Those included Claimant's medical

evidence of record, his lack of functional restrictions by any physicians except after bilateral carpal

tunnel release surgery, and Claimant's essentially normal activities of daily living. The ALJ's

credibility determination is supported by substantial evidence on the record as a whole, and thus

the Court is bound by the ALJ's determination. <u>See</u> <u>Cox v. Barnhart</u>, 471 F.3d 902, 907 (8th Cir.

2006); <u>Robinson v. Sullivan</u>, 956 F.2d 836, 841 (8th Cir. 1992). Accordingly, the ALJ did not err

in discrediting Claimant's subjective complaints of pain. <u>See</u> <u>Hogan v. Apfel</u>, 239 F.3d 958, 962

(8th Cir. 2001)(affirming the ALJ's decision that claimant's complaints of pain were not fully

credible based on findings, inter alia, that claimant's treatment was not consistent with amount of

pain described at hearing, that level of pain described by claimant varied among her medical

records with different physicians, and that time between doctor's visits was not indicative of

severe pain).

Claimant further contends that the ALJ failed to complete a function-by-function

assessment of his RFC. However, the ALJ is not required to provide each limitation in the RFC

immediately followed by a list of the specific evidence supporting this limitation. <u>See</u> Social

Security Ruling 96-8. The ALJ's decision makes clear that he considered all of Claimant's alleged

impairments thoroughly and in detail. The ALJ properly formulated Claimant's RFC based on the

credible evidence of record. <u>See</u> <u>e.g.</u>, <u>Gifford v. Astrue</u>, 2010 WL 2953204 (W.D. Mo. 2010).

Claimant's assertion that there is no discussion of his ability to sit, stand, walk, lift, carry, push or

pull is contrary to the ALJ's RFC finding, which indicated that Claimant could lift, and thus

implicitly carry, push, or pull not more than fifty pounds. An ALJ does not, however, fail in his duty to assess a claimant's RFC on a function-by-function basis merely because the ALJ does not address all areas regardless of whether a limitation is found. See Depover v. Barnhart, 349 F.3d 563, 567 (8th Cir. 2003). Instead, an ALJ who specifically addresses the areas in which he found a limitation and is silent as to those areas in which no limitation is found is believed to have implicitly found no limitation in the latter. Id. at 567-68. See also Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) (ALJ does not fail in duty to fully develop the record by not providing "an in-depth analysis of each piece of record"); Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) ('[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.") (finding it "highly unlikely that the ALJ did not consider and reject"portions of report given the ALJ's explicit reliance on other portions of report).

In the instant case, the ALJ discussed those of Claimant's functional limitations established by the record, which was, as noted by the Commissioner, brief. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (rejecting claimant's argument that ALJ had erred by not supporting RFC with medical evidence when ALJ had discussed what records there were).

Claimant's final challenge to the ALJ's RFC findings is that the ALJ erred by not including work-related restrictions for each severe impairment. The ALJ need only include those limitations he finds to be established by the record. "[The Court] review[s] the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but [the Court] do[es] not require an ALJ to mechanically list and reject every possible limitation." McCoy v. Astrue, 648 F.3d 605,

611, 615 (8th Cir. 2011). The omitted limitations, depend on Claimant being found credible, which the ALJ did not find.

The substantial evidence on the record as a whole supports the ALJ's decision. Where substantial evidence supports the Commissioner's decision, the decision may not be reversed merely because substantial evidence may support a different outcome. Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993) (quoting Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992)).

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole. Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001). Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

C.      New Evidence Before the Appeals Council

Claimant obtained a vocational evaluation completed at the request of counsel after the ALJ issued his decision. (Tr. 1-5, 171-81). The evaluation was submitted to the Appeals Council. The Appeals Council stated that it had considered the additional evidence and determined that it did not provide a basis for changing the ALJ's decision.

The regulations provide that the Appeals Council must evaluate the entire record, including any new and material evidence that relates to the period before the date of the ALJ's decision. 20 C.F.R. § 404.970(b); Cunningham v. Apfel, 222 F.3d 496, 500 (8th Cir. 2000). Additional evidence submitted to the Appeals Council is material when it is "relevant to the claimant's condition for the time period for which benefits were denied." Lamp v. Astrue, 531

F.3d 629, 632 (8th Cir. 2008) (quoting Bergmann v. Apfel, 207 F.3d 1065, 1069 (8th Cir. 2000)). The newly submitted evidence becomes part of the administrative record, even though the evidence was not originally included in the ALJ's record. Cunningham, 222 F.3d at 500. This Court does not review the Appeal Council's denial but determines whether the record as a whole, including the new evidence, supports the ALJ's determination. Cunningham, 222 F.3d at 500.

The Eighth Circuit interprets a statement by the Appeals Council that additional evidence "did not provide a basis for changing the ALJ's decision" as a finding that the additional evidence in question was not material. Aulston v. Astrue, 277 F. App'x 663, 664 (8th Cir. 2008) (citing Bergmann, 207 F.3d at 1069-70) (noting that whether additional evidence meets criteria of materiality is a question of law that courts review de novo).

Although the Appeals Council denied Claimant's request for review without comment, records reflect that the Appeals Council received the additional records; that it made them part of the record; that it considered these records; and that it concluded that these records did not provide a basis for changing the decision of the ALJ. (Tr. 1-5). After careful review, the Court concludes that Mr. Israel's evaluation adopted all of the work restrictions contained in Dr. Musich's January 14, 2010 independent medical evaluation completed at counsel's request.

The undersigned finds that the ALJ's determination is supported by substantial evidence on the record as a whole. "It is not the role of [the reviewing] court to reweigh the evidence presented to the ALJ or to try the issue in this case de novo." Wiese v. Astrue, 552 F.3d 728, 730 (8th Cir. 2009) (citation omitted). "If after review, [the court] find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the denial of benefits." Id. (quoting Mapes v. Chater, 82 F.3d

259, 262 (8th Cir. 1996)).  Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

Accordingly,

**IT IS HEREBY RECOMMENDED** that  the final decision of the Commissioner denying social security benefits be **AFFIRMED**.

The parties are advised that they have fourteen  (14) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this   2nd   day of August, 2013.